UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JAMES LYNOM,

      Plaintiff,

v.                                  Case No.:   2:13-cv-483-FtM-DNF

CAROLYN COLVIN, Acting
Commissioner of Social Security,

      Defendant.

_____

## OPINION AND ORDER

Plaintiff, James Lynom, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for disability insurance benefits and supplemental security income.   The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.   For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

   **I.**   **Social Security Act Eligibility, Procedural History the ALJ Decision, and Standard of Review**

   **A.**  **Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382a(3)(A); 20 C.F.R. §§ 404.1505, 416.905.   The impairment must be severe, making the claimant unable to do her previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

**B.  Procedural History**

On January 6, 2010, Plaintiff filed an application for disability insurance benefits asserting a disability onset date of October 30, 2007. (Tr. p. 118, 127). Plaintiff's application was denied initially on March 9, 2010, and denied upon reconsideration on August 27, 2010. (Tr. p. 102, 105). A hearing was held before Administrative Law Judge Ronald S. Robins ("ALJ") on September 30, 2011. (Tr. p. 23-47). The ALJ issued an unfavorable decision on December 14, 2011.  (Tr. p. 9-25).  On May 9, 2013, the Appeals Council denied Plaintiff's request for review. (Tr. p. 1-6). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on June 27, 2013.  This case is now ripe for review.  The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 12).

**C.  Summary of the ALJ's Decision**

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled.  *Packer v. Commissioner of Social Security*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  An ALJ must determine whether the claimant (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the

burden shifts to the Commissioner at step five.   *Hines-Sharp v. Commissioner of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ determined that Plaintiff met the Social Security Act's insured status requirements through December 31, 2012. (Tr. p. 14).   At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 30, 2007, the alleged onset date. (Tr. p. 14).   At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative joint disease, gout, hypertension, and post-status left knee replacement citing 20 C.F.R. § 404.1520(c) and § 416.920(c).   (Tr. p. 14). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. p. 15). At step four, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform a full range of sedentary work as defined in 20 C.F.R. § 404.1567(a) and § 416.967(a). (Tr. p. 16). The ALJ further determined that Plaintiff can occasionally lift 10 pounds and frequently lift less than 10 pounds, can stand and walk for at least 2 hours in an 8-hour workday, and can sit for about 6 hours in an 8-hour workday. (Tr. p. 16). The ALJ limited Plaintiff in the ability to push and pull with the upper and lower extremities. (Tr. p. 16). The ALJ further limited Plaintiff to never climbing ladders, ropes and scaffolds; to avoiding concentrated exposure to vibration; and, to avoiding even moderate exposure to hazards such as machinery and unprotected heights.   (Tr. p. 16). At step five, the ALJ determined that Plaintiff is unable to perform any past relevant work. (Tr. p. 19). The ALJ found that Plaintiff was a younger individual on the alleged onset date, had at least a high school education, can communicate in English, the transferability of job skill was not material, and that there are jobs that exist in significant numbers

in the national economy that Plaintiff can perform (20 C.F.R. 404.1569, 404.1569(a), 416.969, and 416.969(a)). (Tr. p. 19-20). The ALJ concluded that Plaintiff is not under a disability as defined in the Social Security Act, from October 30, 2007 through the date of the decision. (Tr. p. 20).

### D.   Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

II.    **Analysis**

Plaintiff raises four issues on appeal: (1) whether the ALJ erred by failing to include any manipulative limitations in his RFC assessment, (2) whether the ALJ erred by according great weight to the RFC assessment of state agency evaluator Dr. Goodpasture, (3) whether the ALJ erred by not considering Plaintiff's obesity to be a severe impairment and not considering how obesity affects Plaintiff's other severe impairments, and (4) whether the ALJ erred by failing to find that Plaintiff's lower extremity conditions meet or equal a listed impairment.   The Court will analyze each issue in turn.

### A.  Whether the ALJ erred by failing to include any manipulative limitations in his RFC assessment.

Plaintiff argues that the ALJ erred in his RFC determination by failing to include any limitations that reflect a consideration of Plaintiff's bilateral hand impairments, e.g., grasping, holding, and turning objects. (Doc. 11, p. 11).   Plaintiff contends that severe and painful gout has damaged the joints in his fingers, hands, wrists, and elbows, and the ALJ should have included manipulative limitations in Plaintiff's RFC due to these conditions. (Doc. 11, p. 10-11).   The Commissioner responds that the diagnoses related to Plaintiff's hands and wrists are insufficient to show Plaintiff had any manipulative limitations. (Doc. 15, p. 18).

"The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments."   *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).   In determining a claimant's RFC, the ALJ must consider all of the relevant evidence of record.   *Barrio v. Commissioner of Social Security*, 394 F. App'x 635, 637 (11th Cir. 2010).   However, the Eleventh Circuit has consistently held that the claimant bears the burden of proving that he is disabled, and consequently, he is responsible for producing evidence in support of his claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

In this case, the Court finds that the ALJ did not err by failing to include manipulative limitations in his RFC determination. Although Plaintiff is correct that the results of a consultative examination by Dr. Eshan Kibria on March 2, 2010, revealed Plaintiff's right hand had "decreased strength", "an inability to close right first" and an inability to "fully flex second and third fingers," substantial evidence of record supports the ALJ's decision to not include manipulative limitations. For example, Dr. Audrey Goodpasture, a state agency physical examiner, after reviewing medical evidence related to Plaintiff's hands and wrists, including Dr. Kibria's objective findings, opined that Plaintiff had no manipulative impairments. (Tr. p. 423-25). Additionally, Plaintiff's treating physician, Dr. Bilotta, opined in August 2011 that Plaintiff had no manipulative impairments, instead opining that Plaintiff is able to use his hands for repetitive, simple grasping and fine manipulation. (Tr. p. 560-61). The opinions of Dr. Goodpasture and Dr. Bilotta, which the ALJ accorded "great weight" and "some weight" respectively, provide substantial evidence for the RFC finding that Plaintiff had no manipulative limitations. Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). For these reasons, the Court affirms the ALJ's decision to not include manipulative limitations in his RFC finding.

### B. Whether the ALJ erred by according great weight to the RFC assessment of state agency evaluator Dr. Goodpasture

Plaintiff argues that the ALJ erred in according the opinion of state agency evaluator Dr. Goodpasture "great weight" because this opinion was given months before Plaintiff's knee surgery and did not contemplate Plaintiff's post-surgical history. (Doc. 11, p. 13). Plaintiff argues that

the ALJ erred by failing to offer an explanation for finding an RFC less restrictive than that found by Dr. Goodpasture's opinion, which he gave "great weight." (Doc. 11, p. 14).   Plaintiff contends that although the ALJ's RFC determination considered Plaintiff's status/post left knee replacement as a severe impairment, he failed to explain: (1) how he reached the same lifting/carrying, walking/standing, and sitting limitations set by Dr. Goodpasture, who gave his opinion before Plaintiff's knee replacement surgery, and (2) why the limiting effect of Plaintiff's left knee surgery combined with the slow recovery and continued use of a cane did not further reduce Plaintiff's RFC. (Doc. 11, p. 14).

The Commissioner responds that although the ALJ gave Dr. Goodpasture's opinion "great weight," he did not adopt it in its entirety. (Doc. 15, p. 13).   According to the Commissioner, the ALJ properly determined Plaintiff's RFC after considering the medical evidence related to Plaintiff's knee impairment as a whole, not just Dr. Goodpasture's opinion. (Doc. 15, p. 13).

Weighing the opinions and findings of treating, examining, and non-examining is an integral part of the process for determining disability. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).   The ALJ must state with particularity the weight given different medical opinions and the reasons therefore, and the failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).   Without the ALJ stating the specific weight given to various medical opinions and his reasons therefore, it is impossible for a reviewing court to determine whether the ultimate decision is supported by substantial evidence. *Kahle v. Comm'r of Soc. Sec.*, 845 F.Supp.2d 1262, 1271 (M.D. Fla. 2012) (citing *Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1987)).

In this case, the Court finds no error in the ALJ's decision to accord Dr. Goodpasture's opinion "great weight".   Although Dr. Goodpasture gave her opinion prior to Plaintiff's

reconstructive left knee surgery in June 2011, the fact that the ALJ accorded this opinion "great weight" does not mean that he did not consider the impairments caused by the procedure.   In his opinion, the ALJ specifically found that Plaintiff had the severe impairment of "status-post left knee replacement," thus showing that he considered the effects of this impairment in his RFC finding. (Tr. p. 14).   The ALJ also considered the medical evidence related to Plaintiff's knee impairment.   For example, the ALJ also accorded some weight to Dr. Bilotta's opinion in August 2011, two months after Plaintiff's knee replacement surgery. (Tr. p. 18).

Furthermore, contrary to Plaintiff's argument, the ALJ did not err by failing to include in his RFC determination the additional postural limitations Dr. Goodpasture found in her RFC assessment.   In her RFC assessment, Dr. Goodpasture found that Plaintiff could occasionally climb a ramp/stairs, but never a ladder/rope/scaffold; occasionally balance, stoop, kneel, crouch, and crawl. (Tr. p. 424).   These types of postural limitations, however, would not affect the ALJ's RFC determination, as "[p]ostural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work." Social Security Ruling ("SSR") 96-9p. [1] Thus, the additional limitations specified by Dr. Goodpasture would not have altered the ALJ's step five finding that Plaintiff can work the unskilled sedentary jobs of addresser, ticket checker, and clerk.   Likewise, even if the ALJ had adopted Dr. Goodpasture's RFC limitation that Plaintiff required an assistive hand-held device, this would not have affected Plaintiff's ability to perform unskilled sedentary work.   When asked by the VE in a hypothetical question at the hearing to

---

[1]  According to the Eleventh Circuit, "Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration.   Even though the rulings are not binding on us, we should nonetheless accord the rulings great respect and deference . . ." *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) (unpublished) (citations omitted).

assume Plaintiff required a hand-held assistive device and can occasionally balance, stoop, kneel, crouch, and crawl, the VE testified that Plaintiff could still perform the same sedentary jobs the ALJ found he could perform. (Tr. p. 20, 44-45).   Accordingly, the ALJ did not err in his consideration of Dr. Goodpasture's opinion.

### C. Whether the ALJ erred by not considering Plaintiff's obesity to be a severe impairment and not considering how obesity affects Plaintiff's other severe impairments

Plaintiff argues that ALJ erred by failing to find that Plaintiff's obesity constituted a severe impairment and by failing to consider the impact of Plaintiff's obesity on his other severe impairments. (Doc. 11, p 16).   Plaintiff argues that his impairments from his obesity should be reflected in limitations in his ability to walk, lift, carry, climb and stoop. (Doc. 11, p. 17). According to Plaintiff, the combination of his arthritic difficulties, and the gouty tophus of his right and wrist, limit his manipulative abilities to an extent than would be experienced by a non-obese person. (Doc. 11, p. 17).

The Commissioner argues that even assuming Plaintiff's obesity is a "severe" impairment, the ALJ did not commit reversible error because found at least one "severe" impairment at step two of the sequential evaluation. (Doc. 15, p. 7).   The Commissioner responds that the ALJ properly considered the combined effect of Plaintiff's impairments, including his obesity. (Doc. 15, p. 6).   The Commissioner argues that the RFC assessed by the ALJ accommodates Plaintiff's obesity. (Doc. 15, p. 7).

SSR 02-1p instructs "adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including an individual's residual functional capacity." SSR 02-1p.   SSR 02-1p provides that obesity can cause limitations in functioning, specifically in the exertional functions of sitting,

standing, walking, lifting, carrying, pushing, and pulling; postural functions such as climbing, balancing, stooping, and crouching; the ability to manipulate with the fingers and hands; and the ability to tolerate extreme heat, humidity, or hazards.

In this case, the Court finds that the ALJ failed to comply with SSR 02-1p.   At the hearing, Plaintiff testified that he was currently 6'2" tall and weighs 273 pounds, and had previously weighed as much as 300 pounds. (Tr. 38).   Dr. Goodpasture in his RFC assessment found that Plaintiff's "obesity contributes to his immobility" and that Plaintiff's body mass index was 38. Despite this medical evidence, the ALJ not only failed to analyze how Plaintiff's obesity affects his RFC, but even failed to mention Plaintiff's obesity at all in his opinion.   This omission constitutes reversible error.   Without an explicit analysis of the affects Plaintiff's obesity has on his RFC, the Court is unable to determine upon review whether the ALJ considered Plaintiff's obesity in making his RFC finding.   Thus, the Court rejects the Commissioner's argument that the ALJ's RFC finding accommodates the functional impairment of Plaintiff's obesity.   On remand, the ALJ is directed to consider Plaintiff's obesity in accordance with SSR 02-1p.

### D. Whether the ALJ erred by failing to find that Plaintiff's lower extremity conditions meet or equal a listed impairment

Plaintiff argues that although the medical record shows that he was diagnosed with gout, gouty arthritis, and degenerative disk disease, the ALJ summarily discounted any consideration that Plaintiff's knee impairments meet or are medically equivalent to an impairment found in the SSA's Listing of Impairments, specifically Listings 1.02, 1.03, and 14.09. (Doc. 11, p. 17-18). Plaintiff argues that he cannot ambulate effectively and that he requires the use of a hand-held assistive device. (Doc. 11, p. 20).   Thus, Plaintiff argues that he does meet a listing and that the ALJ's decision is not supported by substantial evidence. (Doc. 11, p. 20).

The Commissioner responds that substantial evidence supports the ALJ's finding that

Plaintiff does not meet or equal any listing. (Doc. 15, p. 8).   The Commissioner argues that Plaintiff has not shown that his impairments meet a listing because he has not shown the inability to ambulate effectively. (Doc. 15, p. 8).

To the extent that Plaintiff argues that the ALJ erred by failing to specifically discuss the evidence of his knee impairments at step three, the Court finds that this argument is without merit. "In the Eleventh Circuit, there is no requirement that the ALJ 'mechanically recite the evidence' when determining whether a claimant's impairments meet any of the listings." *Turner ex rel. BDT v. Comm'r Soc. Sec.*, 2012 WL 1004841, at \*16 (M.D. Fla. Mar. 26, 2012) (citing *Hutchinson v. Bown*, 787 F.2d 1461, 1463 (11th Cir. 1986)).   In this case, the ALJ specifically found at Step Three that Plaintiff's impairments do not meet or medically equal a listing impairment.   Thus, the Court rejects Plaintiff's argument that the ALJ erred by not specifically discussing the evidence of Plaintiff's knee impairment at Step Three.

The Court also rejects Plaintiff's argument that substantial evidence does not support the ALJ's Step Three finding that Plaintiff does not meet a listing.   "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. § 404.1525(a)-(d)).   "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" *Id.* (citing 20 C.F.R. § 404.1526(a)).   The burden is on the claimant at step three to prove the existence of a listing level impairment. *See Carries v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).

Listings 1.02A, 1.03, and 14.09A1 all require that a claimant establish that he has an inability to ambulate effectively. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 1.02A, 1.03, 14.09A1.

The listings define the "inability to ambulate effectively" as "an extreme limitation of the ability to walk . . . that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. pt. 404, subpt. P, app. 1 § 1000B2b(1).   The Court finds that Plaintiff has failed to carry his burden of establishing that he is unable to ambulate effectively. Although Plaintiff testified that he needs a hand-held assistive device to ambulate and the medical evidence mentions numerous times in which Plaintiff utilized an assistive device, he has failed to cite any evidence showing that a physician prescribed a hand-held assistive device. *See* SSR 96-9p (providing that "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed . . . .").   In fact, many of these records downplay that Plaintiff needs an assistive device long term.   For example, although Plaintiff presented to Dr. Kibria in March 2010 using a crutches, Dr. Kibria noted that Plaintiff's use of the crutches was only "temporarily medically necessary" due to Plaintiff's gouty arthritis flaring up. (Tr. 416, 419).   Again, in July 2011, Plaintiff informed a physical therapist that he had not been using an assistive device for mobility before being admitted for his left knee surgery in June 2011. (Tr. 657).   Additionally, although Plaintiff cites to evidence from August 2011 showing Plaintiff used a cane and crutch, there is no evidence that these assistive devices were prescribed.   Plaintiff has failed to carry his burden of showing that he used these assistive devices for the required period of twelve continuous months. 42 U.S.C. § 423(d)(1)(A); *Barnhart v. Wilson*, 535 U.S. 212, 217-225 (2002) (a claimant's inability to work must last for a continuous period of at least twelve months).   Finally, although Plaintiff cites to Dr. Goodpasture's opinion in August 2010 that an assistive device is medically necessary, Dr. Goodpasture did not opine that Plaintiff met any listing, but instead specifically found that Plaintiff is not disabled. (Tr. 90).

Since Plaintiff did not require an assistive for the required period of twelve months, this Court finds that the ALJ erred in not finding Plaintiff met a Listing.

**III.     Conclusion**

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is not supported by substantial evidence.   The decision of the Commissioner is **REVERSED AND REMANDED** for the ALJ to conduct an analysis of Plaintiff's obesity pursuant to SSR 02-1p**.** The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on September 26, 2014.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties